**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DIRECT BIOLOGICS, LLC,** *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:22-CV-381-SH** |
| **ADAM MCQUEEN, VIVEX BIOLOGICS, INC. AND VIVEX BIOLOGICS GROUP, INC.,** *Defendants* | § | |
| | § | |
| | § | |

**O R D E R**

Before the Court are Direct Biologics, LLC's Opposed Application for Temporary Restraining Order and Preliminary Injunction, filed April 25, 2022 (Dkt. 6); Defendant Adam McQueen's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue (Dkt. 12), filed April 28, 2022; Defendant Adam McQueen's Motion to Stay Litigation and Refer Plaintiff's Application for Preliminary Injunction to Arbitration (Dkt. 33), filed May 13, 2022; Defendant Adam McQueen's Motion to Strike Brief in Support of Application for Preliminary Injunction (Dkt. 39) and Defendant Adam McQueen's Motion in Limine (Dkt. 40), both filed May 16, 2022; Adam McQueen's Unopposed Motion for Extension of Time (Dkt. 48), filed May 18, 2022; Defendants Vivex Biologics, Inc. and Vivex Biologics Group, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue, filed May 19, 2022 (Dkt. 50); Direct Biologics, LLC's Opposed Motion for Leave to File Under Seal an Exhibit to Its Reply in Support of Application for Preliminary Injunction, filed May 23, 2022 (Dkt. 52); and the parties' response and reply briefs.

The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Dkt. 15.

## I. Background

Direct Biologics, LLC ("DB") brings this breach of covenant not to compete and misappropriation of trade secrets lawsuit against former employee Adam McQueen and his new employer, Vivex Biologics, Inc. ("Vivex).[1]

### A. McQueen's Employment with Direct Biologics

DB is a biotechnology company that focuses on cellular and regenerative therapies. Complaint (Dkt. 5) ¶ 16. DB has two main product lines: AmnioWrap and ExoFlo. *Id.* ¶¶ 17-18. The AmnioWrap product line is an allographic skin substitute for slow-healing wounds, while the ExoFlo product line uses a proprietary extracellular vesicle ("EV") technology to stimulate tissue healing processes. *Id.*

McQueen worked as Executive Vice President for Marketing at DB from April 30, 2018 until March 28, 2022.[2] McQueen also is an equity-holding member of Direct Biologics. DB alleges that McQueen, as a high-level executive, had access to its proprietary and trade secret information:

> For the past four years, Defendant Adam McQueen has had a front-row seat as Direct Biologics has developed its innovative technologies, refined its manufacturing and logistics systems, contracted several key contract manufacturing organizations ("CMOs"), and navigated the FDA approval process at an extraordinary pace. As the company's third-hired employee, an equity-holding Member of the LLC, and until just recently a member of its C-level strategy and operations teams, McQueen knows all Direct Biologics' secrets. He is one of the only people in the company to have been intimately involved with both the AmnioWrap and EV product lines, and he is one of handful of individuals who knows the company's most closely guarded secret: the formula and production specifications for its flagship technology, ExoFlo.

---

[1] DB is a Wyoming limited liability company with its principal place of business in Austin, Texas. Complaint (Dkt. 5) ¶ 5. McQueen is a resident of Dallas, Georgia. *Id.* ¶ 6. Vivex Biologics Group, Inc. is a Delaware corporation with its principal place of business is in Marietta, Georgia. *Id.* ¶ 8. Vivex Biologics, Inc. is a Georgia corporation with its principal place of business is in Marietta, Georgia. *Id.* ¶ 9.

[2] DB alleges that it was planning to terminate McQueen for cause before he tendered his resignation. Dkt. 5 ¶ 60. Regardless, DB sent him a termination letter on March 29, 2022. *Id.* ¶ 62.

*Id.* ¶ 28. At issue here, McQueen's employment agreements with DB contain covenants not to compete and agreements to protect DB's proprietary and confidential information. Specifically, McQueen's Employment Agreement contains the following covenant not to compete:

> Employee shall not, during employment and for a period of one year following termination, own or provide services as an employee or contractor similar to that which Employee provided to Employer, to any entity that competes with the Business of Employer. For purposes of this covenant, the term "Business" shall mean developing, producing, manufacturing, providing, soliciting orders for, selling, distributing, or marketing Company Products and Services in any state of the United States of America in which Employer does business. For purposes hereof, "Company Products and Services" means any regenerative medical products that (i) Employer currently anticipates developing, producing, providing, marketing, distributing or selling, (ii) Employer develops, produces, provides, markets or distributes while Employee is employed by Employer or is otherwise providing services to Employer, or (iii) are in development before or when Employee's employment terminates and about which Employee received trade secret or Confidential information.

Dkt. 6-4 ¶ 6.1. The Employment Agreement also contains the following restrictions on confidential information:

> Employer has and will provide Employee with Confidential Information in the course of Employee's employment. In exchange, Employee will, during employment and at all times thereafter, will hold the Confidential Information in strict confidence and will not use, reproduce, disclose or deliver, directly or indirectly, any Confidential Information except to the extent necessary to perform Employee's duties as an employee of Employer or as permitted by a duly authorized representative of Employer. Employee will use best efforts to prevent the unauthorized use, reproduction, disclosure, or delivery of Confidential Information by others.

*Id.* ¶ 5.4. In addition, the Employment Agreement contains an arbitration clause requiring the parties to arbitrate all claims arising out of the Employment Agreement. Dkt. 6-4 at § 14.

McQueen's Operating Agreement contains the following restrictions:

> (a) **Confidential Information.** Each Manager, Member and each Member Principal acknowledges the economic value of the Confidential Information (as defined below) of the Company. Accordingly, during the Confidential Restricted Period (as defined below), each such Manager, each such Member and each such Member Principal shall not, in whole or in part, directly or indirectly:
>
> (i) divulge, furnish, make available or disclose any Confidential Information in any manner to any Person, firm, corporation, partnership, limited liability company, association or other entity, except with respect to business of the Company where a Confidentiality Agreement in form approved by the Board has been obtained for the benefit of the Company;
>
> (ii) use any Confidential Information for itself or for any other Person except as may be necessary in connection with the performance of its duties hereunder; or
>
> (iii) bring to the Company's offices nor use, disclose to the Company, or induce the Company to use, any confidential information or documents belonging to a third party.
>
> ***
>
> (b) **Restrictions on Competition.** Each Member and each of such Member's Member Principals covenants and agrees that so long as such Member remains as a Member of the Company, and for twenty-four (24) months upon the transfer of or disposal of all of such Member's Units (or, with respect to a Member Principal, for twenty-four months after the date at which such Person ceases to be a Member Principal) (in either such case, the "Restriction Period"), such Member or Member Principal shall not directly or indirectly own an interest in or engage in (whether as an employee, principal, shareholder, partner, consultant or any other capacity) an enterprise conducting business activities that are the same or substantially similar to those of the Company anywhere in United States of America or territories thereof (the "Territory").

Dkt. 6-5 §§ 17.1(a), (b).

**B. McQueen's Employment with Vivex**

McQueen began looking for a new job in February 2022 and interviewed with Vivex, a biotechnology company headquartered in Marietta, Georgia. On March 28, 2022, McQueen resigned from DB and accepted the position of Vice President of Product Strategy for Vivex. Dkt. 46-1 at 84.

DB alleges that Vivex is a direct competitor that sells and markets allograft products and develops EV products. Dkt. 51 at 6. DB further alleges that Vivex hired McQueen to provide services similar to those he previously provided DB, in violation of the Employment Agreement and Operating Agreement. In addition, DB alleges that as a senior manager at Vivex, McQueen is positioned to help Vivex compete with DB's AmnioWrap product line and guide Vivex through accelerated development and FDA approval of new EV products. Dkt. 5 ¶ 75. DB contends that "Vivex is one of only a few companies that has the resources, infrastructure, and commercial motive in place to immediately and wrongfully exploit the Direct Biologics Confidential Information McQueen is carrying with him to his new employer." *Id.* ¶ 40.

DB further alleges that after McQueen began working for Vivex, it discovered that while McQueen was still working for DB, he had linked his personal Dropbox account to DB's online accounts. *Id.* ¶ 66. "Using this Dropbox link, McQueen deliberately misappropriated to his personal control numerous documents containing Direct Biologics' Confidential Information and trade secrets, including some of the company's most sensitive proprietary information." *Id.* DB contends that it never authorized McQueen to link his personal Dropbox account to its cloud-based corporate accounts or place company documents or information on his personal cloud storage account. DB alleges that McQueen has shared this confidential information with Vivex. *Id.* ¶¶ 69-70.

McQueen contends that he has complied with his contractually agreed covenants and works for Vivex in a non-competitive role. McQueen also denies that he has used or disclosed DB's confidential information, and asserts that he has "repeatedly sought to return all information and documents to Plaintiff." Dkt. 49 at 2. McQueen further alleges that he began using a personal Dropbox account when he first started working for DB because DB had not yet given him a company-owned computer or access to a company-controlled filesharing or storage platform. Dkt. 49 at 2. McQueen states that he has not modified any DB document linked between his personal and company Dropbox accounts since July 2, 2021. *Id.* at 4.

**C. Court Proceedings**

On April 20, 2022, DB filed this lawsuit against McQueen in state court. Dkt. 1-1. On April 21, 2022, McQueen removed the case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441(a). On April 25, 2022, DB filed an amended Original Complaint adding as defendants Vivex and Vivex Biologics Group, Inc. (collectively, "Vivex"). Dkt. 5. DB alleges breach of contract and breach of fiduciary duty against McQueen; tortious interference with a contract against Vivex; and misappropriation and disclosure of trade secrets, in violation of the Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA"), against all Defendants. DB also seeks to enjoin Defendants from continuing their employment relationship, and to prevent Defendants' alleged misappropriation, misuse, and disclosure of DB's confidential information and trade secrets.

On April 25, 2022, DB filed the instant Application for Temporary Restraining Order ("TRO") and Preliminary Injunction, seeking: (1) an immediate TRO directing McQueen and Vivex to (i) comply with the noncompete covenants, (ii) return and stop accessing, using, or sharing Plaintiff's confidential and trade secret information, and (iii) prevent spoliation of any evidence pending consideration of its request for a preliminary injunction; (2) a preliminary injunction

hearing no later than 14 days from the date of the application; and (3) entry of a preliminary injunction enjoining McQueen and Vivex from (i) violating the noncompete covenants and (ii) accessing, using, or sharing DB's confidential and trade secret information. Dkt. 6 at 8. On May 4, 2022, after conducting an evidentiary hearing, the Court granted the Application for TRO in part and scheduled a hearing for the Application for Preliminary Injunction. Dkt. 26.[3]

On May 13, 2022—after the Court granted the TRO—McQueen filed a Motion to Stay Litigation and Refer Plainitff's Application for Preliminary Injunction to Arbitration. Dkt. 33. On May 16, 2002, the Court held an evidentiary hearing on the Application for Preliminary Injunction and extended the TRO for 14 days or until the Court ruled on the Application for Preliminary Injunction, whichever occurred first. Dkt. 43.

After considering all of the relevant law, the evidence presented at the hearing, and the parties' briefs, the Court makes the following rulings.

## II. Motion to Stay Litigation

Under the Federal Arbitration Act ("FAA"), parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Id.*

The Employment Agreement at issue contains the following arbitration clause.

> Any controversy or claim arising out of or relating to this Agreement or any matter arising out of the employment relationship between Employee and Employer or the termination of such relationship shall be resolved exclusively by arbitration to take place in Austin, Texas, under the authority of the Federal Arbitration Act, according to the rules of the then-current Employment Arbitration Rules of the American Arbitration Association ("AAA"), and judgment on the

[3] DB also moved for a TRO against Vivex, but the Court found that DB failed to sustain its burden to show that the Court has personal jurisdiction over Vivex. Dkt. 26 at 13. DB moves for a preliminary injunction against McQueen only. Dkt. 34 at 5.

> award rendered by the arbitrator may be entered by any court having jurisdiction thereof in Austin, Texas.
>
> ***
>
> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

Dkt. 6-4 at § 14 ("Arbitration Agreement"). The Arbitration Agreement also contains the following "carve-out" exception for TROs and requests for preliminary injunctive relief:

> However, a party may pursue a temporary restraining order and/or preliminary injunctive relief in connection with any restrictive covenants, with related expedited discovery for the parties, in a court of law in state district court or federal court in Austin, Texas and, thereafter, require arbitration of all issues of final relief.

*Id.*

McQueen moves the Court to stay this lawsuit and refer Direct Biologics' Application for Preliminary Injunction to arbitration based on the Arbitration Agreement. DB does not dispute that it entered into a valid and binding Arbitration Agreement with McQueen, and that its claims against McQueen fall within the Agreement. It contends, however, that the carve-out provision permits it to seek a preliminary injunction from this Court, and that the Court has the jurisdiction to rule on it. The Court agrees.

The Arbitration Agreement unequivocally permits DB to seek preliminary relief in federal court. Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc.*, 139 S. Ct. at 529. The Fifth Circuit Court of Appeals has specifically held that a district court "can grant preliminary relief before deciding whether to compel arbitration" based on its equitable powers to preserve the status quo where the request for a preliminary injunction was filed ***before*** the motion to compel arbitration. *Janvey v.*

*Alguire*, 647 F.3d 585, 594 (5th Cir. 2011); *N. Am. Deer Registry, Inc. v. DNA Sols., Inc.*, No. 4:17-CV-00062, 2017 WL 1426753, at *2 (E.D. Tex. Apr. 21, 2017) (holding that motion to compel arbitration does not divest Court of jurisdiction to order discovery or grant preliminary injunctive relief).

Accordingly, the Court has jurisdiction to rule on the Application for Preliminary Injunction. McQueen's Motion to Stay Litigation and Refer Plaintiff's Application for Preliminary Injunction to Arbitration (Dkt. 33) is **DENIED**.

## III. Application for Preliminary Injunction

DB seeks a preliminary injunction against McQueen to (1) enforce the non-compete covenants and prevent him from working for Vivex, and (2) prevent the disclosure of DB's confidential information and trade secrets, as required by the parties' confidentiality agreements and Texas and federal law. Dkt. 34 at 5.

### A. Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy" and "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). "The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). A court should issue a preliminary injunction only if the movant establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016).

Because a preliminary injunction is an extraordinary form of equitable relief, the movant must clearly carry the burden of persuasion on all four requirements. *Planned Parenthood Ass'n of*

*Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012). Failure of the movant to establish any one of the elements will result in denial of the preliminary injunction. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020). Even when the movant carries its burden of persuasion on all four elements, the decision to grant or deny relief is left to the sound discretion of the district court. *Miss. Power & Light*, 760 F.2d at 621.

**B. Irreparable Injury**

The Court's analysis begins and ends with its finding that DB has not met its burden to show that it will be irreparably harmed in the absence of an injunction. To show a threat of irreparable injury, a plaintiff must demonstrate "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986).

> Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief.

11A MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. April 2022 Update) ("WRIGHT & MILLER").

In general, a preliminary injunction will be denied if it appears that the applicant has an adequate alternate remedy in the form of money damages. *Id.* "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). In addition, a plaintiff seeking a preliminary injunction must establish that he is "likely" to suffer irreparable harm in the absence of preliminary relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Speculative injury is not sufficient, and a preliminary injunction will not be issued simply to prevent the possibility of some remote future

injury. *Id.* at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

The preliminary injunction record shows that Vivex is a competitor of DB, and that McQueen is providing services to Vivex as an employee similar to those he provided to DB. DB argues that it faces irreparable harm from McQueen's alleged misappropriation of its confidential and trade secrets, and that: "Because McQueen was a highly trained employee who possesses critical knowledge about Direct Biologics' business and products, Texas law presumes that McQueen's employment at Vivex is causing irreparable injury." Dkt. 34 at 21-22.

Some Texas courts have found that "proof that a highly trained employee is continuing to breach a non-competition covenant gives rise to a rebuttable presumption that the applicant is suffering irreparable injury." *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 236 (Tex. App.—Houston [1st Dist.] 2003, no pet.). But proof of actual breach is required:

> A rebuttable presumption that an employer is suffering irreparable injury arises, however, only when the employer produces *proof* that the highly-trained employee is continually breaching his or her covenant not to compete. That is, the employer-movant for a temporary injunction in a suit to enforce a noncompete agreement must come forward with evidence that the high-level employee is actually breaching the noncompete agreement in order to trigger the presumption.

*Communicon, Ltd. v. Guy Brown Fire & Safety, Inc.*, No. 02-17-00330-CV, 2018 WL 1414837, at *7 (Tex. App.—Fort Worth Mar. 22, 2018, no pet.) (cleaned up); *see also, e.g., Cardinal Health*, 106 S.W.3d at 236 (holding that employee produced evidence rebutting presumption); *Unitel Corp. v. Decker*, 731 S.W.2d 636, 639, 641 (Tex. App.—Houston [14th Dist.] 1987, no writ) (relying on rebuttable presumption to support holding that employer had shown irreparable injury pending trial because it was "undisputed" that defendants were breaching non-compete agreement

by using experience acquired from employer in direct competition with employer); *Hartwell's Office World, Inc. v. Systex Corp.*, 598 S.W.2d 636, 639 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (relying on rebuttable presumption and employer's evidence that "show[ed] clearly" fact supporting employer, and noting that employee had not "rebutted this evidence").

What is missing in this case is any evidence that McQueen actually is breaching the noncompete agreements by using the experience he acquired from DB to compete with it. It is unclear, for example, whether McQueen has marketed products in direct competition with DB.

Nor does the evidence before the Court conclusively demonstrate that McQueen has disclosed confidential or trade secret information to Vivex. McQueen testified that he has not divulged any such information and has sought to return DB's confidential information to DB. DB merely speculates that McQueen has disclosed such information to Vivex. Speculation is not enough to show irreparable injury. *Winter*, 555 U.S. at 22.

For these reasons, the rebuttable presumption claimed by DB—a presumption of irreparable injury based on proof that McQueen had and was continuing to breach his covenant not to compete with Vivex—does not arise in this case. *See Communicon, Ltd.*, 2018 WL 1414837, at *7; *Cardinal Health*, 106 S.W.3d at 236. Accordingly, DB must demonstrate that any potential injury "cannot be undone through monetary remedies." *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984).

Precedent of the Fifth Circuit and this Court makes clear that injuries compensable by monetary damages or other relief are insufficient to establish a likelihood of irreparable injury. "While courts are willing to entertain a loss of customers or goodwill as a harm, the movant must come forward with evidence that such an injury is irreparable by showing that the loss cannot be measured in money damages." *JTH Tax LLC v. White*, No. 6-20-CV-00140-ADA, 2020 WL

3843691, at *5 (W.D. Tex. July 8, 2020) (quoting *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 778 (N.D. Tex. 2012)).

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (cleaned up).

DB failed to argue that any potential loss to it from McQueen's alleged conduct cannot be measured in money damages in its Brief in Support of its Application for Preliminary Injunction. Dkt. 34. In its Reply, DB makes the following argument that monetary damages are inadequate:

> Direct Biologics has established a threat to its core competitive advantage: after investing more than $70 million and five years to develop innovative products and secure regulatory approval ahead of all competitors, Direct Biologics is poised to realize the fruits of this labor. With access to McQueen's know-how (including knowledge about marketing, vendors, distribution channels, pricing, regulatory strategies, product formulations, and manufacturing processes) Vivex could undercut Direct Biologics' market position, competitiveness, and future profitability by dramatically accelerating its own development efforts and time to market without investing the time and capital these advantages cost Direct Biologics. This is precisely the type of harm that Texas and Wyoming deem irreparable.

Dkt. 51 at 10. This argument is insufficient. DB has proffered no evidence to show that a monetary remedy would be inadequate compensation for any injury allegedly incurred as a result of McQueen's alleged misconduct. *See Interox Am.*, 736 F.2d at 202 (finding that plaintiff failed to show monetary remedy would be inadequate compensation for any injury allegedly incurred by sale of plant where plaintiff alleged trade secrets would be disclosed and value of its technology diminished); *JTH Tax LLC*, 2020 WL 3843691, at *4 (holding that plaintiffs failed to sustain their burden to show irreparable injury from violation of noncompetition agreement where they

provided no evidence that monetary damages would be inadequate); *TIGI Linea Corp. v. Pro. Prod. Grp., LLC*, No. 4-19-CV-840-RWS, 2020 WL 3154857, at *6 (E.D. Tex. May 20, 2020) (holding that plaintiff did not show irreparable harm where it provided no evidence that monetary damages would be inadequate remedy for tortious interference claim), *R. & R. adopted*, 2020 WL 3130139 (E.D. Tex. June 12, 2020); *Digital Generation*, 869 F. Supp. 2d at 778 (holding that plaintiff failed to show irreparable harm from violation of covenant not to compete where plaintiff failed to present any evidence that damages would be difficult to calculate or monetary damages would be inadequate); 11A WRIGHT & MILLER § 2948.1 (stating that "the termination of business agreements or of employment typically are not found to result in irreparable injury because, if wrongful, damages will provide adequate compensation for any losses").

The Court finds that DB has not demonstrated a substantial threat of irreparable harm. Therefore, the Court need not address the remaining elements for preliminary injunctive relief. *Future Proof Brands*, 982 F.3d at 289; *Planned Parenthood*, 692 F.3d at 352.[4] Because DB has not shown that it is entitled to the "extraordinary and drastic remedy" of a preliminary injunction, *Munaf*, 553 U.S. at 689, its Application for Preliminary Injunction (Dkt. 34) is **DENIED**.

## IV. Arbitration

As discussed above, the Court has jurisdiction to rule on the Application for Preliminary Injunction based on the carve-out provision in the Arbitration Agreement. The parties do not dispute that all claims in this lawsuit between DB and McQueen must be arbitrated. It is also clear that any claims DB alleges against Vivex "arise out" of the Employment Agreement.

[4] Even had DB demonstrated irreparable injury, "the judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator." *Grasso Enterprises, LLC v. CVS Health Corp.*, 143 F. Supp. 3d 530, 543 (W.D. Tex. 2015) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1292 (8th Cir. 1984)).

Once it is determined that a case should be arbitrated, the FAA instructs the court to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. But the Fifth Circuit has held that dismissal, as opposed to a stay pending arbitration, is proper "when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("Although Section 3 of the Federal Arbitration Act directs district courts to stay pending arbitration, we are bound by our precedent which states that dismissal is appropriate 'when *all* of the issues raised in the district court must be submitted to arbitration.'") (quoting *Alford*, 975 F.2d at 1164)). Because all of the issues that remain in this suit must be referred to arbitration, the Court finds that dismissal is appropriate.

## V. Conclusion

In sum, Direct Biologics' Application for Preliminary Injunction (Dkt. 6) is **DENIED**. The Temporary Restraining Order entered on May 4, 2022 (Dkt. 26) is **DISSOLVED**. McQueen's Motion for Extension of Time (Dkt. 48) and Plaintiff's Motion for Leave to File under Seal (Dkt. 52) are **GRANTED**. McQueen's Motion to Stay Litigation and Refer Plaintiff's Application for Preliminary Injunction to Arbitration (Dkt. 33), Motion to Strike Brief in Support of Application for Preliminary Injunction (Dkt. 39), and Motion in Limine (Dkt. 40) are **DENIED**. McQueen's and Vivex's Motions to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue (Dkts. 12 and 50) are **DISMISSED AS MOOT**. All relief not expressly granted herein is **DENIED**. The Court further **ORDERS** that this case is **DISMISSED** without prejudice.

**SIGNED** on May 26, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE